[No. 8526.]

## FREEMAN ET AL. V. HART ET AL.

1. WILLS—*Revocation by Subsequent Writing.* Only such testamentary writings as have for their sole purpose the destruction of a will come within the provisions of Rev. Stat. sec. 7072. (465.)

The testator having made a will disposing of his whole estate, added, years afterwards, a codicil, stating in the first clause thereof that he was

moved ''to add this instrument to my will by the sudden death'' of a son-in-law. The codicil set forth that the son-in-law was indebted to him in several promissory notes and that ''all of these notes were for his several heirs.'' The original will had named as executrix the wife of the son-in-law so deceased. The codicil appointed another daughter and a son, and made provision as to all the testator's personal estate differing from that made by the will, but made no disposition of his real property and manifested no purpose to cancel or revoke, in its entirety, the original will. *Held* that the codicil was not a revocation of the will, but an addition, dictated by the change in circumstances. (461-466.)

2. —— *Attestation—Number of Witnesses.* A codicil attested by only one witness is without effect. (466.)

3. —— *Inconsistent Codicil,* generally speaking a codicil properly executed republishes and gives effect to a former will, and the codicils thereto, however defective in execution, but to this rule is the exception that a subsequent codicil, repugnant throughout to a former one, has not the effect to revive it. (468.)

4. —— *Codicil—Effect Of—When to be Determined.* A codicil duly executed is not to be rejected from probate upon the theory that it is without effect. It is to be received as part of the testament, and its effect subsequently determined at the proper time and upon full hearing. (469.)

*Error to Weld District Court.* Hon. ROBERT G. STRONG, Judge.

Mr. JAMES W. McCREERY and Mr. DONALD C. McCREERY, for plaintiffs in error.

Mr. JOHN T. JACOBS, for defendant in error, Henrietta A. Hart.

Mr. THOMAS A. NIXON, Guardian *ad litem, pro se.*

Mr. Justice BAILEY delivered the opinion of the court.

On the 4th day of January, 1914, Lewis T. Brownell, late of Greeley, Weld County, Colorado, departed this life, leaving a certain writing purporting to be his last will and testament, dated July 11th, 1905. This instrument was duly executed as required by section 7071, R. S. 1908. There is no dispute or contest upon this proposition. There were also found four other writings, all on the same paper with,

or firmly attached to, such purported last will and testament, purporting to be codicils to it, as follows: First. A writing dated February 8th, 1907, duly executed; Second. A writing dated November 29th, 1909, informal and incomplete in execution; Third. A writing dated April 6th, 1911, over which this contest is mainly waged; and Fourth. A writing following the attesting clause of the preceding paper, attempting to alter previous dispositions of property, dated September 25th, 1911, but neither signed nor witnessed. All agree that this instrument is not of force.

The proceeding here is in review of a decree of the District Court of Weld County, ordering the admission to probate and record of the instrument referred to dated April 6th, 1911, as a third codicil to the original will. The contest involves a construction and interpretation of several sections of the Wills' act.

Cross-error is assigned by Henrietta A. Hart upon the refusal of the District Court to also admit the writing dated November 29th, 1909, to probate. But the primary legal question is whether the so-called third codicil should be refused probate because not executed in compliance with the provisions of section 7072, R. S. 1908, relating to revocation of wills.

When Lewis T. Brownell made and executed his original will he had three living children, a son, George Brownell, a daughter, Henrietta A. Hart, and grandchildren by her, another daughter, Mrs. James M. Freeman, and grandchildren by her. These were his only immediate relatives and descendants. His wife was dead. The will itself is in the handwriting of the son-in-law of the testator, James M. Freeman. At this time Mr. Brownell's property consisted mainly of a farm, which was afterward sold and converted into cash. The following is a copy of such will:

"In the name of God, Amen, I, Lewis T. Brownell, of the city of Greeley and County of Weld, and State of Colo-

rado, being of sound and disposing mind and memory, and not acting under duress, menace, fraud, or undue influence of any person whatsoever, do make, publish and declare this my last will and testament, hereby revoking former wills and testaments by me at any time heretofore made.

First: I direct that my body be decently buried, but without unnecessary expense, ostentation or extravagance.

Secondly: I direct that my executor hereinafter named, shall as soon as she may have sufficient funds in her hands realized from the sale of any real estate and personal property herein devised and bequeathed, pay all the expenses of my funeral and the expenses of my last sickness, and all my just debts.

Thirdly: I give and bequeath to my daughter Emma B. Freeman, wife of James M. Freeman, all my personal estate, effects, goods and chattels of whatever kind or nature, owned or possessed by me at time of my death; also in addition thereto I give and devise to my said daughter Emma B. Freeman the full undivided one-third portion of all or any real estate, or the value in money thereof, owned, controlled or possessed by me at the time of my death.

Fourthly: I give and devise to my daughter Ettie A. Hart, wife of Fremont F. Hart, the full undivided one-third portion of all or any real estate or the value in money thereof, owned, controlled or possessed by me at the time of my death.

Fifthly: I give and devise to my three granddaughters, Harriett K. Freeman, Emma L. Freeman, and Carrie Brownell (daughters respectively of Emma B. Freeman and my son George A. Brownell) the full undivided one-third portion of all or any real estate or the value in money thereof, owned, controlled or possessed by me at the time of my death, to share equally each and alike.

Sixthly: I give and bequeath to my said son George A. Brownell the sum of five hundred dollars in lieu of all

interest in any estate personal or real owned by me at time of my death.

Seventhly: In event and only in the event of the death before my death, of said Emma B. Freeman or said Etta A. Hart, then in such event and not otherwise, I direct that the portion which the mother would have received if living at the time of my death shall go respectively to the daughter or daughters respectively of the mother (said Emma B. Freeman or said Etta A. Hart) so that such granddaughters will receive the full portion which their mother respectively would have received if living at the time of my death.

Lastly: I hereby nominate and appoint my said daughter Emma B. Freeman the executor of this my last will and testament, and hereby exempt her from giving any bond as such executor, or any security whatever, and I give her full power and authority to sell all or any portion of the real estate, without any order of any court whatever, owned by me at the time of my death, so as to pay off all incumbrances on same, also to enable her to convert same into money and pay the bequests herein made.

In witness whereof I have hereunto set my hand and seal, and published, and declared, in the presence of the witnesses below named, this to be my last will and testament this 11th day of July, A. D. 1905.

Lewis T. Brownell.     (Seal.)

On this day July 11th, A. D. 1905, Lewis T. Brownell in our presence, signed and sealed this instrument, and published and declared the same to be his last will and testament, and we at his request, and in his presence, and in the presence of each other have hereunto subscribed our names as witnesses.

William F. Stephens,
Residing at 813 17th Street, Greeley, Colo.
Ammon N. Weikert,
Residing at Room 18 Opera House Block, Greeley, Colo.

James M. Freeman,
Residing at 1202 7th Ave., Greeley, Colo.
F. J. Green,
Residing at 1302 9th Street, Greeley Colo."

The writing of February 8th, 1907, on the same paper with the original will, reads as follows:

"I, Lewis T. Brownell, of the City of Greeley, State of Colorado, do make this codicil to my last will in words as follows:

Whereas in and by my last will and testament dated July 11th, 1905, I did nominate and appoint my daughter Emma B. Freeman the executor of my last will and testament. Now in the event of the death of said Emma B. Freeman before my death, then in that event I appoint and nominate my son-in-law, James M. Freeman as executor of my last will and testament with the same powers and privileges as given to my daughter, Emma B. Freeman, as executor of my last will and testament. In event of the death of both Emma B. Freeman and James M. Freeman before my death, then in that event I nominate and appoint my daughter, Ettie A. Hart and my Granddaughter Harriett K. Freeman as executors of my last will and testament with like power and privileges as executors given to my daughter Emma B. Freeman. But in event that my daughter Emma B. Freeman be living at time of my death, then she alone is to be my sole executor of my last will and testament.

In witness whereof I have hereunto set my hand and seal this 8th day of February, A. D. 1907.

Lewis T. Brownell.     (Seal.)

Published and declared by the said Lewis T. Brownell to be the codicil to his last will and testament in the presence of us, who have signed the same as witnesses in his presence at his request, and in the presence of each other.

F. J. Green,
Residing at 1302 9th Street, Greeley Colo.

E. E. Baker,
Residing at 503 11th Ave., Greeley, Colo."

The writing of November 29th, 1909, in the handwriting of Mr. Brownell and on the same paper as the original will, or on a paper securely attached thereto, reads as follows:

" (Codicil)              Greeley, Nov. 29th, 1909.

In case of my death all monies in bank, either as time deposit certificates or open account to be immediately turned over to my daughter Henrietta A. Hart and to my son Geo. A. Brownell, my children.  Also my interest in the Industrial Building and Loan Association of Denver, Colo., share and share alike.  In case either party dies, the whole amount to go to the living one—The (10) ten shares to be paid up (equally) every month until maturity amounting to ($4.83) four dollars and 83-100 payable on the 25th day of each month.

The above conditions subject to any expense of my burial or cremation.

Lewis T. Brownell.      (Seal.)
1202 7th Ave.

Witness:
George W. Fisk,
710 12th St."

Mr. Freeman, the son-in-law, died March 30th, 1911, and Mr. Brownell again in his own handwriting and on the same paper as the original will, added the writing of April 6th, 1911, as follows:

" (Codicil)              Greeley, April 6th, 1911.

The sudden passing away and death of J. M. Freeman causes me to add this instrument to my will, being of sound mind and in good health and that said Freeman is indebted to me for the following amounts and has in no way secured

or protected me or his heirs or assigns, four notes of his making and bearing my endorsement for the amount of thirty-one hundred dollars ($3,100.00) with interest as follows, one note for one thousand dollars ($1,000.00), one of 800 dollars, one of $700, one of. $600, all of said notes bearing interest, all of which are in possession of Greeley National Bank.  Also one note for collection, for monies advanced at various times which he has used for his own special use, amt. to $1,160.25, bearing interest payable to me and as no part of principal or interest has been paid to me.  All of said notes and the four notes were for his several heirs, children left by the issue of James and Emma Freeman, to come from my estate for their benefit as share of my estate for said grandchildren, and as no provision has been made by said Freeman, these several amounts were in case of my death to be the share due them from my estate after all of my bills have been paid.

And in consideration of my two children and their issue and to protect them for what may be left of my estate so they may come into possession of the same, I do here appoint my daughter L. and George A. Brownell, my son, my executors of my will, to serve without bond.  And all monies, stock or interest of every kind personal to Henrietta A. Hart.  L

Building & Loan, ditch or any and all monies due me or to become due, also all personal effects of every kind and description, the same to be divided between them both to share and share alike, after all my debts have been paid, and all service attending my death shall be strictly confined to my family, my body to be cremated, and the ashes to be deposited by the side of my beloved wife at Lynn Grove Cemetery, without extravagance and as simple as possible.

Lewis T. Brownell.          (Seal.)

On this day April 15, A. D. 1911, Lewis T. Brownell in our presence signed and sealed this instrument and pub-

lished and declared the same to be his last will and testament, and we at his request, and in the presence of each other, have hereunto subscribed our names as witnesses.

Witness:

        Geo. W. Fisk,
            710 12th St.
     John A. Crabb,
            707 12th St."

George, the son, died August 1st, 1911, leaving a wife and two children. On the 25th day of September, 1911, decedent added a memorandum in his own handwriting immediately after the attestation clause of the foregoing, or third, codicil to his will. It is neither signed nor witnessed and is written close around the signatures of the witnesses to that codicil, and is as follows:

"Chas. H. Wheeler of Greeley Nat. Bank as executor and without bond. Owing to the death of my son George A. This day have decided to place the sum of five hundred dollars 500 00/100 to his two children Carrie and Helena share & share alike to be paid them at their arriving at 21 years of age the same to be kept at interest until then.

    Sept. 25th, 1911."

After the death of Mr. Brownell the aforesaid instruments in writing were found, all written on two double page sheets of foolscap, securely fastened together by pasting. The original will and the several written instruments were presented as one instrument to the County Court of Weld County for probate and record. At the hearing it appeared that the third codicil had been signed by the testator out of the presence of the attesting witnesses, but upon separate requests to them to attest it as his will, decedent acknowledged it to be his will and the signature thereto to be his. In other words, as to the third codicil, the testator did not sign in the presence of the attesting witnesses or

either of them, but did acknowledge to each of them that it was his will and the signature thereto as his. Thereupon counsel for Harriett K. Freeman, one of the grandchildren of the testator, moved the rejection of the third codicil from probate and record, because it was shown not to have been executed in compliance with section 7072, *supra*, which provides:

"No will shall be revoked otherwise than by the subsequent marriage of the testator, or by burning, tearing or obliterating the said will, by the testator himself or in his presence, by his direction and consent, or by some other will or codicil in writing, declaring the same, signed by the testator in the presence of two or more witnesses, and by them attested in his presence, and no words spoken shall revoke or annul any will in writing, executed as aforesaid in due form of law."

This objection was sustained by the County Court and probate denied, and Mrs. Hart appealed from that judgment to the District Court. In the District Court, on the same evidence, the third codicil was found duly executed and was ordered admitted to probate and record, the court holding that it did not fall within the purview of the revoking statute. But the District Court also held that the first and second codicils were superseded by the provisions of the third, and being without function or legal effect, should not be probated. Counsel for Mrs. Hart assigns cross-error upon this ruling, contending that the court should not interpret the will and codicils for the purpose of determining whether they were superseded or not, or for determining whether they had any purpose or effect, affirming that when such codicils were followed by a third properly executed, the former should have been admitted to probate and record, leaving their purpose and effect for subsequent determination.

The following is the fundamental inquiry in the case: Is the so-called third codicil a revocatory will or codicil in writing under 7072, *supra,* and does that section control and govern as to the manner of its execution?

The language of section 7072, *supra,* plainly indicates that only such testamentary instruments as have for their sole purpose the complete destruction or obliteration of a will fall within its provisions. That such is the purpose and intent of the statute is manifest from the significant expressions used therein. It provides for the revocation of a will by burning, tearing or obliterating. These terms must mean and refer to the utter annihilation and destruction of a will. Then the statute follows with the further provision that a will may be revoked, that is set aside and annulled *in toto,* by some other will or codicil in writing declaring the same, that is declaring the total revocation and destruction thereof. Only instruments having such effect and purpose, and such effect and purpose alone, fall within the purview of section 7072, *supra.* Clearly the third codicil is not such an instrument. It was therefore entitled to probate and record, under the proofs, as having been executed in conformity with section 7071, R. S. 1908. In *re Estate of Carey,* 56 Colo. 77, 136 Pac. 1175, 51 L. R. A. (N. S. 927) Ann. Cas. 1915B, 951.

The testator wrote this third codicil himself, and he declares in its opening lines, after heading the instrument with the word codicil, as follows: "The sudden passing away and death of J. M. Freeman causes me to add this instrument to my will." The testator was adding something to, not totally destroying his will. He was attaching to his will something which he wished construed and interpreted with it. There is no indication that the testator had the single desire and purpose to annihilate and wipe out his original will. There is no provision or declaration whatever in the third codicil which shows that there was then present in the

testator's mind any such intent. A testamentary instrument whose sole effect is the entire destruction, made with the manifest intent and purpose to so destroy, is the only one to which our revocation statute properly applies.

It may be that Mr. Brownell died seized and possessed of real estate, and if so the disposition of such property is still probably controlled only by the terms of the original will, and it may well be that there are several of its provisions which, in whole or in part, despite the third codicil, are still in force and effect. A general examination and consideration of the testamentary instruments taken together indicates that this may prove to be the case. The third codicil is not only not a revocation of any kind of the original will, either express or implied, but on the contrary it is nothing more than an addition thereto, induced by changed conditions, through advancements made, after the execution of the will, for the benefit of certain legatees named therein, and by death and transmutation of property. This situation impelled the testator to add to his original will, but such addition is not a revocation of it as contemplated by section 7072, *supra*. The will has been modified, alterations and changes have been made in it, it has been added to, some of its provisions may be and doubtless are completely nullified, but this does not set it aside and destroy it as a whole.

Upon cross-error the ruling of the court below is assailed because it declined to pass the first and second codicils to probate and record, holding them to be throughout inconsistent with and repugnant to the third codicil, and therefore without function or legal effect.

It is to be noted that the purported second codicil was witnessed by only one person, hence was of no force or effect. But it is argued that the proper execution of a subsequent codicil gives life to and republishes the former will and former codicils attached. This, generally speaking, is

true, but there is an exception to the rule, based on sound reason, which is that if a prior will or codicil is utterly inconsistent with a subsequent will or codicil, that is inconsistent and repugnant throughout, the former is not revived and republished. In law there never was a time when the second codicil had any legal effect. The proper execution of the third codicil could give no life to the second, because every clause, part and parcel of it was superseded by the provisions of the third codicil. Speaking to this point in 1 Woerner's American Law of Administration, sec. 56, star page 113, this is said:

"A codicil will amount to a republication of the will to which it refers, whether it be attached thereto or not; but the intention of the codicil must always determine, and if it appears from the face of the codicil that it was not the intention of the testator to republish, the ordinary presumption derived from the existence of the codicil will be counteracted."

And in *Hobart v. Hobart*, 154 Ill. 610, 30 N. E. 581, 45 Am. St. 151, it is declared:

"Objection is made, that the proof introduced was of the codicil only, and not of the will. It was shown that the original will, and the codicil, and attestations, were all written upon the same paper. The codicil refers to the will, and changes it in part only. When the codicil is written on the same paper as the will, or clearly and unmistakably refers to the will so as to preclude all doubt of its identity, proof of the codicil establishes the will without further proof, except such portions thereof as are revoked or altered by the codicil. * * * It follows, that, if the codicil in the case at bar was duly executed and attested, such portions of the original will, as were not changed by it, were thereby reaffirmed."

The following is also laid down by the authorities as

constituting the rule in reference to the matter now under consideration:

"A codicil to a will operates as a republication of the whole will, so far as it is not revoked or altered by the codicil, and so as to include any alterations made before the date of the codicil." 40 Cyc., p. 1219.

The theory upon which a subsequent codicil republishes a former will or codicil is that the latter is a reaffirmation and ratification of the provisions of the former instruments. See note to section 56, star page 114, 1 Woerner's American Law of Administration, citing *Crosbie v. McDoul*, 4 Ves. 616.

It would not only be unreasonable, but absurd to say that a later codicil inconsistent with and repugnant to a former purported codicil, not properly executed and constituting no part of a will, ratifies and reaffirms such purported codicil. It is the province and duty of the court at this time to determine whether the provisions of the alleged second codicil are so inconsisent with those of the third as to disentitle it to probate. *Whitney v. Hanington*, 36 Colo. 407.

The so-called second codicil, never having become in fact a part of the will for lack of proper execution, under the authorities, it is clear that the third codicil, the provisions of which are wholly inconsistent with those of the second, did not republish the latter, Indeed, from the express terms of the third codicil it is clear that the testator did not intend the second to have force and effect.

The first codicil provides only for succession in executorship, the will itself having named Emma B. Freeman, daughter of the testator, executor. This codicil was duly executed and was part of the will. It was in full force and effect from its execution and thus entitled to probate, to be finally construed and interpreted in connection with other parts of the testament. This codicil, with the original will prior to the execution of the third codicil, alone constituted

the last will of Mr. Brownell. They together made a single properly executed instrument. No particular provision of this instrument can be singled out and denied probate. The original will and the first codicil, go together, and being entitled to probate, must for that purpose stand as an entirety. If that part of the testament described as the first codicil can be separated from the other parts and denied probate, then by the same logic any paragraph in the body of the original will may be withdrawn therefrom and denied probate. This would be so manifestly improper and illogical that the proposition does not deserve further consideration. The first codicil is as much a part of the whole testament as any paragraph included in the original will itself, and while it may be that it has not now any function or legal effect, still that is a matter, if such contention shall be made, to be determined at the proper time and upon full hearing.

The judgment of the trial court is affirmed as to the admission of the original will and the third codicil to probate, and the denial of probate and record to the second codicil. It is reversed as to the denial of probate and record to the first codicil.

The cause is therefore remanded to the District Court, with directions to amend its judgment and decree by also directing the probate of the first codicil, and certify its judgment and decree, as amended, to the County Court.

Judgment affirmed in part and reversed in part, and cause remanded with directions. Each party shall pay his or her costs in this court.

Chief Justice GABBERT and Mr. Justice WHITE concur.

Decided May 1, A. D. 1916. Rehearing denied July 3, A. D. 1916.