In the Matter of the ESTATE OF Frank J. HAURIN, Deceased.

Richard J. SCHEER, Devisee-Appellant,

v.

FIRST NATIONAL BANK OF DENVER, Executor, Lorraine Scheer, Elsie Larsen, John Larsen and August Haurin, Devisees-Appellees.

No. 78–673.

Colorado Court of Appeals, Div. III.

Oct. 25, 1979.

Rehearing Denied Nov. 23, 1979.

Certiorari Denied Jan. 21, 1980.

Bruno, Bruno & Bruno, Frank A. Bruno, Louis B. Bruno, Denver, for devisee-appellant.

Hunter & Danzo, P. C., Frank J. Danzo, Jr., Michael T. Scena, Denver, for devisee-appellee Lorraine Scheer.

No appearances for other devisees-appellees.

VAN CISE, Judge.

Richard J. Scheer appeals from an order decreeing a partial revocation of a will. We reverse.

Frank J. Haurin died in 1976 leaving a will executed in 1967. After making separate bequests and naming the bank as executor, the will provided that the residue. of the estate was to be divided equally among August Haurin, Jr., Lorraine C. Scheer, Richard J. Scheer, John Larsen, and Elsie Larsen. All survived the decedent. When the will was presented for probate, it showed lines in ink drawn through the name of Richard J. Scheer in the residuary clause, although the name was still legible.

A petition for construction of will was filed to determine the legal effect of the lining through of the name. After a contested hearing, the trial court found that, after the formal execution of the will, the lines through the name were drawn by the decedent with the specific intent to remove the name of Richard J. Scheer as legatee so that he would not benefit from the estate. It then ruled that the attempted partial revocation was valid, and determined that the residuary legatees in the will admitted to probate did not include Richard J. Scheer.

■ We assume, without deciding, that the evidence was sufficient to support the court's findings and that this lining through was intended as a revocation of the bequest to Richard J. Scheer. No party is contending for a total revocation of the will. Thus, the sole question is whether, under Colorado law, a portion but not all of a will can be revoked subsequent to its execution by the testator's cancelling or obliterating that portion. We hold that it cannot.

■ A will can be revoked only in the manner provided by statute, and the statutory provisions for revocation of wills must be strictly construed. *In re Grisell's Estate*, 176 Kan. 209, 270 P.2d 285 (1954).

The model Uniform Probate Code provides:

"A Will or any part thereof is revoked (1) by a subsequent Will which revokes the prior Will or a part thereof expressly or by inconsistency; (2) by being burned, torn, cancelled, obliterated, or destroyed with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction." 8 *Uniform Laws Annot., Estate, Probate & Related Laws* § 2–507 (1972).

As worded, this section specifically permits partial revocation by physical act. 8 *Uniform Laws Annot., supra,* (Commissioner note).

■ However, Colorado's version of the Uniform Probate Code states:

"(1) A will or any part thereof is revoked by a subsequent will which revokes the prior will or part thereof expressly or by inconsistency. (2) A will is revoked by being burned, torn, cancelled, obliterated, or destroyed with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction." Section 15–11–507, C.R.S. 1973.

A comparison of these wordings demonstrates that the General Assembly chose not to authorize partial revocations in the situations covered in subsection (2).

Subsection (2) is similar to repealed previous statutes on the same subject, all of which provided for revocation by "burning, tearing or obliterating the will," but none of which mentioned partial revocation. "These terms must mean and refer to the utter annihilation and destruction of a will." *Freeman v. Hart*, 61 Colo. 455, 158 P. 305 (1916). *See also Bailey v. Kennedy*, 162 Colo. 135, 425 P.2d 304 (1967); *Twilley v. Durkee*, 72 Colo. 444, 211 P. 668 (1922).

We quote with approval the rule stated by the Oregon Supreme Court, in interpreting a similar statute in a similar factual situation:

"The rule deducible from the decisions is that, under a statute like ours, if a part of a will is burnt, torn, canceled, or oblit-

erated by the testator (or by another person in his presence and by his direction and consent) the act will be effective to revoke the will if this was the intention of the testator. It is the intent with which the act is done that governs. . . . But if the intent is only to revoke the mutilated portions of the will and those provisions so acted upon can be ascertained, either by an examination of the document itself, or by extrinsic evidence, . . . the mutilations will be disregarded and the will as originally executed will be given effect. . . . There is no provision for partial revocation of a will by cancellation, tearing, etc., and the courts are not at liberty to introduce such a provision into the statute by construction." *In re Estate of Minsinger,* 228 Or. 218, 364 P.2d 615 (1961).

*See also In re Grisell's Estate, supra.*

Under the circumstances of this case, it is apparent that the testator did not intend, by lining through the name of one legatee, to revoke the entire will. Since under our statute there cannot be a partial revocation, the will as originally executed should be admitted to probate.

The order decreeing the partial revocation is reversed, and the cause is remanded for further proceedings consistent with this opinion.

SMITH and STERNBERG, JJ., concur.