MEANS v. URY.

(Filed May 1, 1906).

*Wills—Marriage—Revocation—Republication.*

Under Revisal, section 3116, the will of a married woman is revoked by another marriage contracted after the will was made, and her verbal declaration, during the last coverture, that said paper writing was her last will and testament without any further execution thereof, in accordance with the statute, does not constitute a re-execution and republication of it.

IN THE matter of the will of Cameline Means, heard by *Judge M. H. Justice* upon an issue of *devisavit vel non* at the September Term, 1905, of the Superior Court of CABARRUS. From a judgment in favor of the caveator, Lafayette Ury, the propounder, Edward Means, appealed.

*Adams, Armfield, Jerome & Maness* for the propounder.
*L. T. Hartsell* and *M. B. Stickley* for the caveator.

BROWN, J. Cameline Means, while the wife of Ephriam Means, made her will, and some time thereafter, being a widow, married Jason Carr, and during such coverture verbally declared said paper writing to be her last will and testament without any further execution thereof, in accordance with the statute.

The court below adjudged the paper writing not to be the last will and testament of Cameline Means, upon the ground that it was revoked by her subsequent marriage, and that her verbal declarations could not constitute a re-execution and republication of it. We think the ruling sound.

In respect to her capacity to make a will, the *feme covert* stands upon the same footing as the *feme sole.* Her will is revoked by a subsequent marriage, as much so as if she were a *feme sole* when she made it, and then married. The right

of a married woman to make a will is guaranteed by the Constitution, but that in no way affects the statute declaring that such a will may be revoked by another marriage contracted after the will was made. Revisal, section 3116.

Affirmed.