Argued June 6, affirmed September 6, 1961

In the Matter of the Estate of
CHARLES E. MINSINGER, Deceased
MINSINGER et al v. THE UNITED STATES
NATIONAL BANK OF PORTLAND et al
364 P. 2d 615

*Don S. Willner,* Portland, argued the cause for appellants. On the brief were Lenon & Willner and Robert A. Bennett.

*Clarence D. Phillips,* Portland, argued the cause for respondents Masonic and Eastern Star Home of Forest Grove, Oregon, and Shriners Hospital for Crippled Children. On the brief were Phillips, Coughlin, Buell & Phillips.

*Leonard D. Alley, George B. Campbell,* and *Leonard Bennett,* Portland, argued the cause for respondents David W. Killion, The United States National Bank of Portland, Esther Minsinger Legler, and Frances McBrayer. With them on the brief were Castles, Musick & Thompson, Williams & Alley, Koerner, Young, McColloch & Dezendorf, and Smith, Gray, Hill & Rodgers.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL and LUSK, Justices.

LUSK, J.

This is an appeal from an order of the circuit court for Multnomah county, probate department, admitting to probate the will of Charles E. Minsinger, deceased.

The question for decision is whether there can be in Oregon a partial revocation of a will by cancellation.

The testator died August 23, 1959, leaving an estate consisting of real and personal property appraised at $139,264.76. His will, as drawn and executed by him with legal formality on January 11, 1951, contained eleven paragraphs. Subsequently to the execution of the will, apparently on May 27, 1957, Mr. Minsinger attempted, with a pen, to cancel certain provisions by either crisscrossing or drawing a line through the provision and interlining or writing on the margin "Canceled May 27/57 Charles E. Minsinger". He also made three additions to the will to which attention will

be called. The following provisions were attempted to be canceled in the manner hereinabove explained: In the sixth paragraph a bequest to his grandniece by marriage, Mrs. Frances McBrayer, of one-half of the merchandise in Star Antique Shop, Portland, Oregon, one Fisher piano, one French or gold colored cabinet, all tableware with initial "M" on same in the testator's residence in Portland, Oregon. In the eighth paragraph a devise to David W. Killion, grandnephew of the testator by marriage, of two lots in Portland, Oregon, and a bequest of one phone table and chair, one piano bench, and one tea wagon. In the ninth paragraph (which is a devise in trust to the testator's trustee, The United States National Bank of Portland, Oregon, of real property in Portland, Oregon) the bequest to David W. Killion of an equal share with four others of the net income from such real property. In the tenth paragraph, the residuary clause, the devise and bequest to David W. Killion of an equal share with four others in the residue.

The additions made to the will after its execution by the testator are as follows: In the second paragraph the testator appointed The United States National Bank of Portland, Oregon, his executor and trustee. On May 27, 1957, he added to this provision "also Mrs. Esther L. Legler, Executrix, Jointly." In the seventh paragraph a devise of real property in Portland, Oregon, to Mrs. Esther Minsinger Legler was crossed out and after it was written "Sold about 1954. CEM". The seventh paragraph also contained a bequest to Mrs. Legler of one-half of the merchandise in Star Antique Shop in Portland, Oregon, and one-half of the household goods, bric-a-brac, and personal property in the testator's residence in Portland, Oregon. Lines were drawn through the word "one-half" in each

of these provisions and, in each instance, the word "All" was interlined.

In the eleventh paragraph the testator expressed a desire and request that the household goods, bric-a-brac, and personal property in his residence in Portland, Oregon, be divided between those to whom he had bequeathed them by mutual and friendly agreement. Lines were drawn through the words "divided between those" and the words "all given to my Cousin Mrs. Esther L. Legler" were interlined.

The markings made by the testator did not obliterate any of the words of the will, which are perfectly legible.

There is no dispute about the facts. A stipulation entered into by the parties indicates that after making the changes described, the testator placed the will in a sealed envelope and so retained it in his possession until his death.

The will was originally admitted to probate and letters testamentary issued to The United States National Bank of Portland (Oregon) on August 31, 1959. Thereafter, the contestants Elmer H. Minsinger and Sara C. Flinn, brother and sister of the decedent and his next of kin and heirs at law, filed a petition alleging in substance that because of the obliterations and cancellations made by the testator the will had been revoked. They prayed that the administration of the estate proceed on a basis of intestacy or, in the alternative and should that prayer be denied, that the assets of the estate described in the canceled portions of the will be ordered distributed to them as next of kin and heirs at law as though the testator had died intestate.

In this court the contestants have abandoned their claim of a total revocation of the will and submit

the question of a partial revocation as the sole question for decision.

The circuit court found, inter alia: "In making the interlineations, cancellations and delineations upon the typewritten Will the testator did not intend to revoke the Will, but merely to change certain of its provisions."

As a conclusion of law, the court determined that these attempted changes had "no testamentary effect by reason of * * * Section 114.030 ORS,[1] and Section 114.110 ORS.", and that the document as originally typewritten and executed on the eleventh day of January, 1951, was entitled to be received in probate as the Last Will and Testament of Charles E. Minsinger, deceased.

It is entirely clear from the will itself and the other evidence that the testator did not intend to revoke the will, but only parts of it. The directions in the will as to the testator's burial, the payment of the expenses of his last illness and burial and the payment of his debts, the appointment of an executor and two charitable bequests were left undisturbed, as were the trust provision and the residuary clause, except in the particulars above mentioned. The testator's signatures appearing at the bottom of each page of the will, except the last, and at the end of the will immediately preceding the attestation clause, were unmarked. His intention that the will should be carried out as altered is shown by his attempt to give to his cousin, Mrs. Legler, all the personal property described in paragraphs six and seven, half of which under the will as originally drawn, would have gone to

---

[1] ORS 114.030. Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator.

his grandniece by marriage, Mrs. McBrayer, and half to Mrs. Legler. As the court said in *Board of National Missions, Etc. v. Sherry,* 372 Ill 272, 23 NE2d 730, 733:

"* * * A consideration of the entire document leads irresistibly to the conclusion that testatrix intended her will to stand, except as to the changes she had attempted to make. The appearance of the instrument alone * * * furnishes satisfactory explanation without extrinsic evidence. * * *"

The contestants therefore were right in abandoning their contention that Charles E. Minsinger revoked his will and died intestate. It is equally clear that the testator intended to revoke certain portions of his will and in at least two particulars to make a new disposition of property different from that made in the will as executed so that the question is upon the correctness of the court's conclusion that the testator's acts were without legal efficacy.

ORS 114.110 reads:

"A written will cannot be revoked or altered otherwise than by another written will, or another writing of the testator, declaring such revocation or alteration and executed with the same formalities required by law for the will itself; or unless the will is burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person, in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses."

This section was originally enacted on October 11, 1862. Deady, General Laws of Oregon 1845-1864,

pages 340-341, Civ Code Chapter 8, Title 8, § 770. It replaced section 6 of the Oregon Wills Act (Act of September 26, 1849, Laws of 1850-51, p 274, § 6; Laws of 1854-55, p 384) which read:

"No will in writing, except in cases hereinafter mentioned, *nor any part thereof,* shall be revoked, except by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same by the testator, or in his presence, and by his consent and direction." (Italics added).

See 1 Jaureguy and Love, Oregon Probate Law and Practice, § 372. The omission of the italicized words, "nor any part thereof", from the existing statute constitutes a significant change bearing upon the question before us. That question has never been determined by this court. In 1 Jaureguy and Love op. cit. § 375, pages 361-362, the authors correctly say:

"In the only cases in Oregon in which portions of wills were cancelled or torn, the court did not discuss the question whether, if testatrix had so intended, there would have been a revocation only of those parts thus mutilated, since in each case the court held that the intention of the testatrix was to revoke the entire will."

To the foregoing is cited *In re Dougan's Estate,* 152 Or 235, 53 P2d 511; and *In re Bond's Estate,* 172 Or 509, 143 P2d 244. The more recent case of *Van Wassenhove et al v. Heltzel et al,* 208 Or 207, 300 P2d 783, dealt with notations made on the will by the testatrix, only one of which referred to "dispositive clauses", and which the court held did not "establish a purpose upon her part to change her dispositive plan." 208 Or at 219.

The following statement from 1 Page on Wills,

Lifetime Edition, § 441, is supported by the adjudicated cases:

"In a number of American statutes, all reference to revocation of a part of a will or a clause of a will is omitted; and the statute which regulates revocation by tearing, burning, and the like, applies, in terms, only to the revocation of the will. Under statutes of this type, the weight of authority is that partial revocation by burning, canceling, and the like, is impossible. * * *"①

Other textwriters agree: 1 Jaureguy and Love, op. cit. 361, § 375; 1 Schouler on Wills, § 600; 1 Underhill on Wills, § 229. See, also, 57 Am Jur 346, Wills, § 498; Annot. 62 ALR 1367, 1393; 115 ALR 710, 718; 24 ALR2d 514, 526.

Among the decisions adhering to the majority view are *In re Grisell's Estate,* 176 Kan 209, 270 P2d 285; *In re Johannes' Estate,* 170 Kan 407, 227 P2d 148, 24 ALR2d 507; *Hartz v. Sobel,* 136 Ga 565, 71 SE 995, 38 LRA NS 797, Ann Cas 1912D 165, per Lumpkin, J. (containing an extensive review of the authorities); *Morris v. Bullock,* 185 Ga 12, 194 SE 201, 115 ALR 700; *Appeal of Miles,* 68 Conn 237, 36 A 39, 36 LRA 176; *Johnson v. Johnson,* 21 Conn Sup 126, 145 A2d 759; *Keferl v. Trimbach,* Ohio App., 125 NE2d 753, app d 160 Ohio St 187, 115 NE2d 3; *Coghlin v. Coghlin,* 79 Ohio St 71, 85 NE 1058; *Board of National Missions, Etc. v. Sherry,* supra; *Fleming v. Fleming,* 367 Ill 97, 10 NE2d 641; *In re Thomas' Will,* 76 Minn 237, 79 NW 104, per Mitchell, J. (decided partly on ground of dependent relative revocation); *Lovell v. Quitman,*

---

① Professor Page includes Oregon as one of the few states taking the opposite view. See 1 Page op. cit., p 795, and note 4 on that page, citing *In re Dougan's Estate,* supra. The statement is erroneous, as above indicated. See, also, comment on *Dougan* case 95 CJS 61, Wills, § 279.

88 NY 377, 42 Am Rep 254; *Matter of Tremain,* 282 NY 485, 27 NE2d 19.①

■ The rule deducible from the decisions is that, under a statute like ours, if a part of a will is burnt, torn, canceled, or obliterated by the testator (or by another person in his presence and by his direction and consent) the act will be effective to revoke the will if this was the intention of the testator. It is the intent with which the act is done that governs. *In re Dougan's Estate,* supra, 152 Or at 255; *In re Bond's Estate,* supra, 172 Or at 556; *Fleming v. Fleming,* supra. But if the intent is only to revoke the mutilated portions of the will and those provisions so acted upon can be ascertained, either by an examination of the document itself, or by extrinsic evidence, *In re Thomas' Will,* supra; *Hartz v. Sobel,* supra, the mutilations will be disregarded and the will as originally executed will be given effect. The reason for this is to be found in the statute itself, which, while it contains language of prohibition, is also permissive in effect. *Lovell v. Quitman,* supra. It permits the revocation of *a will*— not of a part or parts thereof—by canceling, tearing, etc. The subject is wholly governed by statute and the statute is unambiguous. There is no provision for partial revocation of a will by cancellation, tearing, etc., and the courts are not at liberty to introduce such a provision into the statute by construction.

The Massachusetts court at an early day came to the opposite conclusion in a case that has been pressed upon us by counsel in argument. *Bigelow v. Gillott,* 123 Mass 102 (1877), 25 Am Rep 32. But this decision

---

① New York is said to be the only jurisdiction having a statute which includes "parts" or "clauses" of a will that holds there can be no partial revocation. 1 Jaureguy and Love, op. cit. p 361, n 31. However, the New York court held that the words "or any part thereof" referred to *alteration* only by a writing duly attested and not to *revocation* by canceling, etc.

has found little favor in other jurisdictions and we believe is not an example of sound statutory construction.

We conclude that the circuit court was right in holding that the attempted revocation of portions of the will was nugatory and in admitting the will to probate as originally executed. Manifestly, the dispositive provisions written by the testator on the will, giving to Mrs. Legler all instead of one-half of certain personal property, were void under ORS 114.110 and ORS 114.030. So also of the attempt to appoint an executrix. The notation in paragraph seven of the will, "Sold about 1954", is innocuous. *Van Wassenhove v. Heltzel,* supra.

Inasmuch as the law upon the question of partial revocation of a will by canceling and the like has been heretofore unsettled, the contestants will be relieved from the payment of the costs and disbursements of the proponents of the will and their costs and disbursements will be paid out of the estate.

The decree is affirmed.